# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DAVID VAN DUKE, | Case No.: 2:13-cv-00688-APG-BNW |
| Petitioner | **Order** |
| v. | |
| JERRY HOWELL, et al., | |
| Respondents. | |

David Van Duke, a Nevada prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. I deny Duke's habeas petition, deny him a certificate of appealability, and direct the Clerk of the Court to enter judgment accordingly.

## I.   BACKGROUND

Duke's convictions are the result of events that occurred in Clark County, Nevada on June 26, 2007. ECF No. 9-12. In its order affirming Duke's convictions, the Nevada Supreme Court described the crime, as revealed by the evidence at Duke's trial, as follows:

> Officer Fullington testified that he initially stopped Duke for an expired license plate. When Duke and the passenger of the vehicle began looking back at Officer Fullington in an "unusual, fidgety manner," Officer Fullington called for backup. Officer Fullington told Duke and the passenger to put their hands on the steering wheel and dashboard, respectively. When Duke and the passenger continued to act in an unusual manner, Officer Fullington pulled out his taser, turned the taser on, held the taser down towards his side, and told Duke to "not do anything" or he would tase Duke. Officer Hirschi responded to the call for backup, exited his vehicle, and began to walk towards Officer Fullington. At that time, Duke sped off in his car. Officer Hirshi and Officer Fullington returned to their patrol vehicles and began pursuit of Duke with their lights and sirens on. Duke drove into an apartment complex parking lot, followed by Officer Hirshi, while Officer Fullington drove to the next entrance to the apartment complex to block Duke's exit. Because he was concerned that Duke was going to ram his car, Officer Fullington exited his vehicle. Duke stopped his car before ramming Officer Fullington's patrol car and was boxed in by Officer Hirshi. Officer Fullington saw

>a beer bottle being thrown out of the passenger's window and what appeared to be a bar of soap being thrown out of Duke's window. The beer bottle and "bar of soap" were collected, and a field test and laboratory test determined that the "bar of soap" was cocaine and weighed 36.34 grams.

ECF No. 10-11 at 3.

On January 15, 2008, following a jury trial, Duke was found guilty of "stop required on signal of police officer," trafficking in a controlled substance of 28 grams or more, and transporting a controlled substance. ECF No. 9-16. Duke was sentenced to a term of 13 to 60 months for "stop required on signal of a police officer," a consecutive term of 10 to 25 years for trafficking, and a concurrent term of 13 to 60 months for transporting a controlled substance. ECF No. 10. The Nevada Supreme Court affirmed Duke's convictions. ECF No. 10-11.

Duke, acting in *pro se*, filed a post-conviction state habeas petition on January 27, 2010, and an amended petition on April 15, 2010. ECF Nos. 10-20, 10-23. With the assistance of counsel, Duke filed a supplemental post-conviction state habeas petition on January 5, 2011. ECF No. 11-2. After an evidentiary hearing, *see* ECF Nos. 11-12, 11-14, 11-15, the state district court denied Duke's post-conviction state habeas petition. ECF No. 11-22. The Nevada Supreme Court affirmed the denial. ECF No. 12-21.

Duke, acting in *pro se*, dispatched a post-conviction federal habeas petition on or about April 18, 2013. ECF No. 6. The respondents moved to dismiss the petition on September 5, 2013. ECF No. 8. Duke moved to amend his petition on September 30, 2013; moved for a stay on October 30, 2013; moved for leave to amend on October 30, 2013; and supplemented his petition on January 28, 2014. ECF Nos. 16, 18, 19, 24.

While his federal habeas petition was still pending, Duke, acting in *pro se*, filed a second post-conviction state habeas petition and two supplements to the petition on December 26, 2013.

ECF No. 32-1, 32-3, 32-4. The state district court dismissed Duke's second post-conviction state habeas petition as untimely under Nev. Rev. Stat. § 34.726 and successive under Nev. Rev. Stat. § 34.810 on March 31, 2014. ECF No. 32-8. The Nevada Supreme Court affirmed the dismissal on September 16, 2014. ECF No. 32-18.

On June 30, 2014, I denied Duke's motion to amend the petition, denied Duke's motion for stay without prejudice, and granted the respondents' motion to dismiss, in part. ECF No. 25. Specifically, I dismissed Ground One as conclusory and found portions of Grounds Two and Three to be unexhausted. *Id.* I ordered Duke to either abandon his unexhausted grounds for relief and proceed on the exhausted grounds, dismiss his petition without prejudice in order to return to state district court to exhaust his unexhausted claims, or file a motion for stay. *Id.*

Duke moved for a stay and thereafter moved to lift the stay, asserting that he had exhausted the portions of the grounds that I previously found unexhausted due to the Nevada Supreme Court's order filed September 16, 2014, which affirmed the dismissal of Duke's second post-conviction state habeas petition. ECF No. 26, 28. I granted the motion for stay and denied the motion to lift the stay as moot on March 19, 2015. ECF No. 33. However, because some of the claims I found to be unexhausted in my June 30, 2014 order may have been procedurally defaulted in light of the Nevada Supreme Court's September 16, 2014 order, I deferred the stay until the parties filed supplemental briefing. *Id.* The respondents filed a supplemental brief, and Duke filed his response. ECF No. 38, 39.

Following supplemental briefing, I explained that Duke's second state habeas petition exhausted only claims that were not part of Duke's federal petition and, with one possible exception, none of the claims I previously found unexhausted. ECF No. 41. I ordered that to the extent Ground Three asserts a substantive sufficiency-of-the-evidence claim as to the

transportation conviction, that part of Ground Three was dismissed as procedurally barred. *Id.* Accordingly, I vacated my prior order deferring entry of the stay, denied Duke's motion for stay without prejudice, and ordered Duke to either file a motion to dismiss seeking partial dismissal only of the unexhausted claims, a motion to dismiss the entire petition without prejudice in order to return to state court to exhaust the unexhausted claims, or a motion for other appropriate relief. *Id.* Duke filed a motion indicating that he wished to dismiss the unexhausted claims. ECF No. 42. I granted the motion. ECF No. 43.

The respondents filed an answer to the remaining grounds in Duke's petition on May 16, 2018. ECF No. 50. Duke moved for reconsideration of my prior decision that a portion of Ground Two of his petition was unexhausted. ECF No. 51. I denied that motion. ECF No. 54. Duke filed a reply in support of his petition on June 27, 2018. ECF No. 52. Duke then filed a supplement to his reply on October 22, 2018, which was termed a "reply on collect memory of preliminary hearing that would aid me in a defense for writ of habeas corpus." ECF No. 55.

## II.     STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous.   The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

       The Supreme Court of the United States has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III. DISCUSSION

### A. Ground Two

In Ground Two, Duke argues that his federal constitutional rights were violated when his trial counsel failed to present a viable defense, which according to Duke is demonstrated by his trial counsel's statement during the post-conviction evidentiary hearing that it was an "open and shut case." ECF No. 6 at 6. Duke also argues that his trial counsel failed to obtain and provide him with a copy of the preliminary hearing transcript and perjured himself when he informed the state district court that he had a copy of the transcript because the preliminary hearing transcript did not exist. *Id.* at 7-8. The respondents argue that Duke does not state what sort of defense his trial counsel should have developed or what information from the preliminary hearing transcript could have aided him in developing a defense. ECF No. 50 at 4. In the supplement to his reply, it appears that Duke believes that Officer Fullington could have been impeached at the trial with his preliminary hearing testimony, which provided that Duke, the driver of the vehicle, was cooperative while the passenger, Duke's brother, was the one causing problems during the initial stop. ECF No. 55 at 3. In Duke's first state habeas appeal, the Supreme Court of Nevada held: "Duke argues that the district court erred by denying his petition because counsels' ineffectiveness denied him equal protection. Because trial and appellate counsel were not ineffective, we conclude this claim is without merit." ECF No. 12-21 at 4.

Duke's preliminary hearing was held in Justice Court, Las Vegas Township on November 26, 2007. ECF No. 9-1 at 3. Duke and his trial counsel were present at the preliminary hearing, and Officer John Fullington was the only witness to testify. *Id.* On January 15, 2008, before the trial began, the state district court minutes reflect a discussion about the preliminary transcript:

6

> Deft. stated he was to have received a motion for discovery. [Duke's trial counsel] stated he has discussed the facts of the case with the Deft.; Deft. would like additional discovery as to what was testified to at the Preliminary hearing. [The State] stated he believes the information was provided. Deft. stated it was not received. [Duke's trial counsel] stated he is in possession of the information. Court advised the Deft. his counsel has the information and will discuss it with him.

ECF No. 9-8 at 8; *see also* ECF No. 9-13 at 18-19 (transcript of the exchange in which Duke's trial counsel stated that he has what the State provided under the applicable discovery rules).

Following the trial, Duke moved for production of transcripts and for production of documents on April 1, 2009 and May 12, 2009, respectively. ECF No. 10-9, 10-14. The state district court granted Duke's motion for production of documents on May 27, 2009. ECF No. 9-8 at 15. The state district court ordered Duke's trial counsel to deliver Duke's file to Duke within two weeks. *Id.* On July 29, 2009, Duke filed a motion to compel, explaining that his trial counsel did not provide the preliminary transcript. ECF No. 10-17. A hearing was held on August 12, 2009. ECF No. 9-8 at 16. It appears that Duke's trial counsel provided Duke his file before the hearing, but that file did not contain the preliminary transcript. *See id.* The state district court noted that "it does not appear the transcripts from the preliminary hearing . . . [were] prepared." *Id.* On September 2, 2009, Duke's trial counsel informed the state district court that, indeed, "transcripts for the preliminary hearing . . . were not prepared." *Id.* at 19.

Duke's trial counsel testified at the post-conviction evidentiary hearing that Duke's case did not contain "an overly complex factual situation" and "was a fairly straight forward case." ECF No. 11-14 at 4, 6. He also explained that he did not remember discussing with Duke the waiver of Duke's speedy trial rights to enable time for the preliminary hearing transcripts to be filed. *Id.* at 19-20. In fact, Duke's trial counsel did not remember the preliminary hearing at the

7

time of the post-conviction evidentiary hearing, so he was unable to answer whether having the preliminary hearing transcripts would have been beneficial or not at the trial. *Id.* at 20.

In order to determine whether Duke's trial counsel was deficient for not obtaining the preliminary hearing transcripts, *Strickland v. Washington* must be assessed. In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel, requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court of the United States instructed:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when

8

> the two apply in tandem, review is "doubly" so, *Knowles*[ *v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonably argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as 'doubly deferential.'").

In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

It is unclear why Duke's trial counsel did not request to have the preliminary hearing transcribed in case the transcript became necessary for impeachment purposes at Duke's trial. However, it is also unclear what impeachment value the preliminary hearing transcript possessed. Duke maintains that Officer Fullington testified at the preliminary hearing that Duke was cooperative during the vehicle stop while his passenger was the one causing problems. ECF No. 55 at 3. This testimony, if true, varies slightly from Officer Fullington's testimony at trial. *See* ECF No. 9-13 at 47, 50-51 (testimony of Officer Fullington at trial that both Duke and the passenger were "acting in a . . . unusual fidgety manner" after he stopped their vehicle); *see also* ECF No. 9-14 at 26 (testimony of Officer Fullington at trial that Duke and the passenger "were looking back towards [him], acting in a very unusual manner"). This alleged discrepancy between Officer Fullington's testimony at the preliminary hearing and the trial is not especially

9

significant. Indeed, because Duke's demeanor during the initial stop is comparatively immaterial to his later actions which formed the basis of his convictions—leaving the traffic stop and attempting to dispose of 36.34 grams of cocaine from the driver-side window—the impeachment value of the alleged discrepancy is weak. *See Sully v. Ayers*, 725 F.3d 1057, 1073 (9th Cir. 2013) (finding that the defendant did "not show[ ] that counsel was ineffective for failing to investigate and present evidence to impeach [a witness's] statement" because "the supposedly impeaching evidence that counsel failed to uncover and present . . . either had no impeachment value or was inculpatory"); *cf. Nixon v. Newsome*, 888 F.2d 112, 115-16 (11th Cir. 1989) (holding that the defendant's trial counsel was ineffective when he "failed to follow up on his cross-examination [of the witness] by confronting her with her [prior] statements" because there were "glaring and crucial discrepancies between [the witness's] testimony at the two trials" and her testimony was crucial). Thus, it cannot be determined that Duke's trial counsel was deficient in failing to have the preliminary transcript available for impeachment purposes or that, if there was a deficiency, Duke was prejudiced. *Strickland*, 466 U.S. at 688, 694.[1]

Turning to Duke's next contention that his trial counsel failed to provide him with the preliminary hearing transcripts, it is clear from the record that Duke was never provided with the transcripts. However, that is simply because they were never prepared. There was no active concealment of the transcripts by Duke's trial counsel. Duke asserts that his trial counsel

---

[1] Duke also contends that the preliminary hearing transcript should be construed as favorable evidence that should have been turned over by the State under *Brady v. Maryland*, 373 U.S. 83 (1963). ECF No. 24 at 2. The Supreme Court held in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. However, the State did not suppress the preliminary transcripts. Rather, the preliminary transcripts were never requested by either party and, therefore, never prepared.

misrepresented the fact that he had copies of the preliminary hearing transcripts; however, that accusation does not appear to be entirely accurate. Duke's trial counsel appears to have only acknowledged receipt generally of the State's file under the applicable discovery rules, not the preliminary hearing transcript specifically. *See* ECF No. 9-8 at 8; ECF No. 9-13 at 18-19. Although I conclude that Duke's trial counsel was not deficient in not providing the preliminary hearing transcripts because none existed, I do note that Duke's trial counsel could have communicated with Duke more effectively.

Finally, I turn to Duke's assertion that his trial counsel did not present a viable defense, which was based on trial counsel's statement at the post-conviction evidentiary hearing that Duke's case "was a fairly straight forward case." ECF No. 11-14 at 4, 6. This statement alone does not support a finding that Duke's trial counsel failed to present a viable defense. In fact, a review of the closing argument demonstrates that trial counsel's theory of defense was that Officer Fullington's testimony was the only evidence supporting the fact that the disposed cocaine came from the vehicle Duke was driving or, alternatively, that the passenger disposed of the cocaine, not Duke. *See* ECF No. 9-14 at 44-46.

Accordingly, based on the foregoing, the Supreme Court of Nevada's ruling that Duke's trial counsel was not ineffective (*see* ECF No. 12-21 at 4) was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). I deny Duke habeas corpus relief with respect to Ground Two.

**B.     Ground Three**

In Ground Three Duke argues that his federal constitutional rights were violated when his appellate counsel failed to raise a claim in his direct appeal that his convictions for trafficking in

11

a controlled substance and transport of a controlled substance violate double jeopardy. ECF No. 6 at 11. The respondents argue that Duke's appellate counsel was not ineffective because trafficking can be proven without proving the elements of transportation—here, that Duke possessed a specific quantity of cocaine—and transportation can be proven without proving elements of trafficking—here, that Duke transported cocaine, regardless of quantity. ECF No. 50 at 7.

In Duke's first state habeas appeal, the Supreme Court of Nevada held:

> Duke argues that the district court erred by denying his claim that appellate counsel was ineffective for failing to argue that his dual convictions for transportation of a controlled substance and trafficking in a controlled substance violated double jeopardy. The district court determined that this claim lacked merit. Because neither statute expressly allows for or prohibits multiple convictions, *see* NRS 453.321, NRS 453.3385, and each offense, as charged, requires proof of an element that the other does not, the Double Jeopardy Clause is not implicated. *See Jackson v. State*, 128 Nev. ___, ___, ___ P.3d ___, ___ (2012) (Adv. Op. No. 55, December 6, 2012). Therefore, appellate counsel was not deficient and the district court did not err by denying this claim.

ECF No. 12-21 at 3-4.

In order to prevail on an ineffective assistance of appellate counsel claim, Duke "must first show that his counsel was objectively unreasonable . . . in failing to find arguable issues on appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). If Duke is successful in meeting that burden, "he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id.*

In order to determine whether Duke's appellate counsel acted objectively unreasonably in failing to raise a double jeopardy claim, I must first assess whether there the Double Jeopardy

Clause was violated. The Fifth Amendment's Double Jeopardy Clause prohibits multiple punishments for the same offense. U.S. Const. amend. V. The Double Jeopardy Clause provides three related protections: (1) it prohibits a second prosecution for the same offense after acquittal; (2) it prohibits a second prosecution for the same offense after conviction; and (3) it prohibits multiple punishments for the same offense. *United States v. Wilson*, 420 U.S. 332, 343 (1975). "[T]he final component of double jeopardy—protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, . . . the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent.").

The "same-elements" test established in *Blockburger v. United States*, 284 U.S. 299 (1932) is used to determine whether multiple prosecutions or multiple punishments involve the same offense. *United States v. Dixon*, 509 U.S. 688, 696 (1993). The test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Id.*; *see also Ball v. United States*, 470 U.S. 856, 861 (1985) ("The assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the same offense under two different statutes."). "Conversely, '[d]ouble jeopardy is not implicated so long as each violation requires proof of an element which the other does not.'" *Wilson v. Belleque*, 554 F.3d 816, 829 (9th Cir. 2009) (quoting *United States v. Vargas-Castillo*, 329 F.3d 715, 720 (9th Cir. 2003). "'If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.'" *Id.* (quoting

*Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)). The "same act or transaction" can "constitute[ ] a violation of two distinct statutory provisions." *Blockburger*, 284 U.S. at 304.

Duke was convicted of trafficking in a controlled substance in violation of Nevada Revised Statutes § 453.3385 and transporting a controlled substance in violation of § 453.321. ECF No. 10. Section 453.3385(1) provides that "a person who knowingly or intentionally sells, manufactures, delivers or brings into this State or who is knowingly or intentionally in actual or constructive possession of . . . any controlled substance which is listed in schedule I, except marijuana . . . shall be punished" if the amount "is 4 grams or more." And § 453.321(1) provides that "it is unlawful for a person to: (a) [i]mport, transport, sell, exchange, barter, supply, prescribe, dispense, give away or administer a controlled or counterfeit substance; (b) [m]anufacture or compound a counterfeit substance; or (c) [o]ffer or attempt to do any act set forth in paragraph (a) or (b)." Section 453.321(2)-(5) outlines the punishment for transporting a controlled substance, which is based on the type of controlled substance transported.

The Supreme Court of Nevada relied on the correct federal law standards and applied them reasonably to the facts of Duke's case. *See* ECF No. 12-21 at 3 ("[E]ach offense, as charged, requires proof of an element that the other does not"). Trafficking requires at least four grams of a controlled substance. Nev. Rev. Stat. § 453.3385. There is no quantity requirement for transportation of a controlled substance. *See* Nev. Rev. Stat. § 453.321. Similarly, transportation of a controlled substance requires transportation. *See id.* There is no transportation requirement for trafficking; in fact, trafficking is accomplished by selling, manufacturing, delivering, or possessing a controlled substance. *See* Nev. Rev. Stat. § 453.3385. Because trafficking of a controlled substance and transporting a controlled substance each "contains an element not contained in the other," *Dixon*, 509 U.S. at 696, there is no Double

14

Jeopardy Clause violation, and as such, Duke's appellate counsel "was [not] objectively unreasonable" for not including a Double Jeopardy Clause violation in Duke's direct appeal. *Smith*, 528 U.S. at 285. Accordingly, the Supreme Court of Nevada's ruling was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). I deny Duke habeas corpus relief with respect to Ground Three.

## IV. CERTIFICATE OF APPEALABILITY

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Supreme Court of the United States has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). A certificate of appealability is unwarranted. I deny Duke a certificate of appealability.

## V. CONCLUSION

I THEREFORE ORDER that the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (**ECF No. 6**) **is DENIED**.

I FURTHER ORDER that Duke is denied a certificate of appealability.

I FURTHER ORDER the Clerk of Court to substitute Jerry Howell for Dwight Neven as the respondent warden on the docket for this case.

/ / / /

I FURTHER ORDER the Clerk of the Court to enter judgment accordingly.

Dated: November 13, 2019.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE